UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| DIORIS SUERO, | : | |
| Plaintiff, | : | No. 5:13-cv-7181 |
| v. | : | |
| | : | |
| ANDREW THOMAS WATKINS, | : | |
| BRYANT SEMENZA, | : | |
| GEORGE VOLPE, NIK HANNEVIG, | : | |
| JOHN DOES 1 through 10, | : | |
| and UNITED STATES OF AMERICA, | : | |
| Defendants. | : | |

_____

### MEMORANDUM
**Motion of the Federal Defendants to Dismiss and/or for Summary Judgment, ECF No. 52 – Granted in part**
**Motion of the Federal Defendants to Stay Discovery, ECF No. 53 – Granted in part**

**Joseph F. Leeson, Jr.**                                              **February 12, 2016**
**United States District Judge**

## I.      INTRODUCTION

On December 10, 2013, Plaintiff initiated this civil rights action pursuant to 42 U.S.C.

§ 1983.  In his Second Amended Complaint, Plaintiff alleges that Defendants unlawfully entered

his residence, used excessive force in arresting him, and unlawfully detained him on an arrest

warrant issued for his brother, Rogel Suero.  Plaintiff asserts federal civil rights violations under

the First, Fourth, and Fourteenth Amendments, and state tort claims of assault and battery, false

imprisonment, false arrest, and intentional infliction of emotional distress ("IIED").  Currently

pending are the Motion of the Federal Defendants to Dismiss and/or for Summary Judgment and

the Motion of the Federal Defendants to Stay Discovery.  For the reasons set forth below, the

Motions are granted in part.

## II.   **BACKGROUND**

Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 on December 10, 2013, an Amended Complaint on January 17, 2014, and a Second Amended Complaint on June 30, 2014. The Second Amended Complaint names as Defendants: Pennsylvania State Police Officer Andrew Watkins, who was on assignment to the United States Marshals' Fugitive Task Force, United States Marshal Bryant Semenza, United States Marshal Shawn Eck, United States Marshal Nik Hannevig, Northampton County Deputy Sheriff George Volpe,[1] and ten John Doe officers.[2]   Second Am. Compl. ¶¶ 2-7, ECF No. 19.   Plaintiff alleges that on January 9, 2013, Defendants went to his residence looking to arrest his brother with "no intent to arrest Plaintiff or search his residence."   Id. ¶¶ 11-12.   Plaintiff alleges that Defendants knocked on the door, claiming to have an arrest warrant for him.   Id. ¶ 18.   According to Plaintiff, when he opened the door, Defendants rushed into the apartment, and Defendant Volpe charged at him with a ballistic shield, striking him in the face, before tackling him to the ground.   Id. ¶¶ 19-20.   Plaintiff alleges that he identified himself and provided photo identification, but Defendants continued to assault him, arrest him, detain him, and transport him to police barracks in handcuffs despite the fact that Defendants had a photograph of his brother in their possession.   Id. ¶¶ 17, 21.   Plaintiff alleges that Defendants Eck, Semenza, and Hannevig "were involved in the planning,

---

[1] As discussed below, Defendant Volpe was acting in his capacity as deputized Deputy United States Marshal with the United States Marshals' Fugitive Task Force.

[2] As will be explained, each of the individually named Defendants are either federal officers or state or local officers acting on behalf of a federal agency.   Accordingly, the Court will construe the Second Amended Complaint as setting forth a Bivens action only.   See Pelullo v. Phila. Det. Ctr. Phila., No. 13-5165, 2015 U.S. Dist. LEXIS 121108, at *4-5 (E.D. Pa. Sept. 9, 2015) (construing the action as setting forth a Bivens claim, despite being filed as a section 1983 action, because the complaint sued only federal officers and federal employees).   See also Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) (establishing a direct cause of action in federal court against federal officers for violations of the United States Constitution).

preparation, and are believed to have been involved in the forceful entry to Plaintiff's residence, and the arrest and wrongful detention of Plaintiff." Id. ¶ 22. According to Plaintiff, he was detained for approximately four hours and suffered permanent injuries, including a broken nose. Id. ¶¶ 21-26. Plaintiff alleges that Defendant Watkins participated in the planning, arrest, and assault of Plaintiff, including handcuffing and confining him for hours. Id. ¶ 23.

Defendant Watkins, a Pennsylvania Police Officer since 1996, assigned to the United States Marshals' Fugitive Task Force since 2012, testified that he was assigned to work with the United States Marshals' Fugitive Task Force on January 9, 2013, regarding the arrest warrant for Plaintiff's brother. Watkins Dep. 6:11-7:19; 12:13-24, Ex. 6, ECF No. 52. Plaintiff's brother, Rogel Suero, was wanted for Criminal Homicide, Burglary, Robbery, and related charges wherein he allegedly held a gun to the victim's head and attempted to smother her with a pillowcase. Defs.' Mot. Summ. J. Exs. 2-3, ECF No. 52. The Task Force had obtained information from family members that Rogel was living with Plaintiff, Defs.' Mot. Summ. J. Ex. 4, ECF No. 52, who "advised that Rogel SUERO was very close with his brother, Dioris SUERO, and that they [were] staying together somewhere in Pennsylvania," Defs.' Mot. Summ. J. Ex. 5, ECF No. 52. The Task Force determined that Plaintiff lived at 2631 30th Street SW in Allentown, Pennsylvania. Defs.' Mot. Summ. J. Exs. 4-5.

Defendant Watkins testified that the Task Force was briefed shortly before going to Plaintiff and Rogel's apartment and shown photographs of both. Watkins Dep. 19:14-23:18. However, the photographs of both Plaintiff and Rogel were approximately three to four years old. Watkins Dep. 22:3-16, 51:18-20. Defendants also had a general description of Rogel as a black-Hispanic male, approximately thirty years of age. Watkins Dep. 32:8-18. Defendant Watkins testified that the Task Force was provided with Rogel's height and weight, but were

unaware if his weight may have changed because of the age of the photographs.  Watkins Dep. 32:12-18.  According to an Incident Report from the day after the incident, Plaintiff was born in 1985, his height was six feet and three inches, his weight was 225 pounds, he had a heavy build, and he had black hair and black eyes.  Defs.' Mot. Summ. J. Ex. 4.  The Report listed Rogel's year of birth as 1982, his height as six feet and two inches, his weight as 250 pounds, he had a heavy build, and had black hair and black eyes.  Id.

Defendant Watkins testified that when Plaintiff opened the door, Defendants ordered him to the ground because "[b]ased upon the description at the time, [Defendants] were uncertain if it was his brother, if it was Rogel."  Watkins Dep. 33:9-19.  Defendant Watkins stated that Plaintiff "matched a general description of his brother [and w]ith that, he had to be arrested and determined who he was."  Watkins Dep. 45:14-17.  Defendant Watkins acknowledged that there was a likelihood Defendants might encounter Plaintiff when they went to serve the arrest warrant, but that "a lot of things could happen when there's hesitation and a delay when placing somebody into custody. . . . [I]f [the police] see a guy that matches the description of a guy [the police are] looking for for homicide, we're going to place him into custody for his safety as well as our own."  Watkins Dep. 54:16-55:11.  Defendant Watkins testified "that's the case here. [Plaintiff] looked just like our guy."  Watkins Dep. 55:15-16.  Defendant Watkins explained that Defendants did not know if Rogel had exchanged his driver's license with Plaintiff and that they "looked close enough" that they "had to be absolutely certain that [they] were not releasing someone that was wanted for homicide."  Watkins' Dep. 56:16-57:3.  Defendant Watkins testified Plaintiff refused to comply with orders to get on the ground, and instead, took a fighting stance, which is when Defendant Volpe knocked Plaintiff to the ground so that he could be

4

handcuffed.  Watkins Dep. 40:4-9.  Defendant Watkins testified that this occurred "all within seconds."  Watkins Dep. 47:1-7.

On July 28, 2015, the Court approved a stipulation between the parties agreeing to dismiss all claims against Defendant Eck, to dismiss the state law claims in count two against Defendants Semenza and Hannevig, and to substitute the United States as defendant for Defendants Semenza and Hannevig in count two.  Joint Stipulation, ECF No. 50.

The Motion of the Federal Defendants to Dismiss and/or for Summary Judgment, ECF No. 52, and the Motion of the Federal Defendants to Stay Discovery, ECF No. 53, were filed on August 18, 2015.  In the Motion of the Federal Defendants to Dismiss and/or for Summary Judgment, Defendants first assert that the constitutional claims in count one against Defendants Semenza and Hannevig should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted.  Defs.' Mot. Summ. J. 10-11.  Second, Defendants argue that judgment should be granted in favor of Defendants Volpe and Watkins on count one because they are entitled to qualified immunity.  Id. at 12-25.  Third, Defendants contend that the individual Defendants are absolutely immune for the state law claims in count two and that the United States must be substituted as the sole defendant.  Id. at 25-27.  Fourth, Defendants assert that summary judgment should be granted in the United States' favor on the state tort claims in count two as the individual officers are entitled to qualified immunity because the use of force, arrest, and detention were reasonable.  Id. at 28-30.  Fifth, Defendants argue that Plaintiff fails to state a claim for IIED and this claim should be dismissed with prejudice.  Id. at 30-31.  In the Motion of the Federal Defendants to Stay Discovery, Defendants contend that discovery should be stayed pending resolution of the qualified immunity issue because qualified immunity is not

merely a defense at trial, but is an entitlement not to face the burdens of litigation.  ECF No. 53.

Plaintiff filed a response in opposition to both Motions on September 4, 2015.  ECF Nos. 55-56.

**III.**      <u>**STANDARD OF REVIEW**</u>

As noted, Defendants' Motion seeks relief under both Rule 12(b)(6) and Rule 56 of the

Federal Rules of Civil Procedure.  The Court will evaluate Defendants' first and fifth arguments

under the motion to dismiss standard of review, and will apply the summary judgment standard

to Defendants' second, third, and fourth arguments.

**A.**      **Motion to Dismiss for Failure to State a Claim**

In rendering a decision on a motion to dismiss under Rule 12(b)(6), the Court must

"accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief."  <u>See</u> <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)

(quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In <u>Bell Atlantic</u>

<u>Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550

U.S. at 555 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).  In <u>Ashcroft v. Iqbal</u>, 556 U.S.

662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss

under Rule 12(b)(6).

First, the Court observed, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions."  <u>Id.</u> at 678.  Thus, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the

proscribed] conduct.'"  Id.; Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 563 n.8).

For "without some factual allegation in the complaint, a claimant cannot satisfy the requirement

that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests."

Phillips, 515 F.3d 224, 232 (citing Twombly, 550 U.S. at 555 n.3).

Second, the Court emphasized, "only a complaint that states a plausible claim for relief

survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief

. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense."  Id. at 678.  Only if "the '[f]actual allegations . . . raise a right to relief

above the speculative level'" has the plaintiff stated a plausible claim.  Phillips, 515 F.3d at 234

(quoting Twombly, 550 U.S. at 555).  This is because Rule 8(a)(2) "requires not merely a short

and plain statement, but instead mandates a statement 'showing that the pleader is entitled to

relief.'"  See id., 515 F.3d at 234 (quoting Fed. R. Civ. P. 8(a)(2)).  If "the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679

(quoting Fed. R. Civ. P. 8(a)(2)).  "Detailed factual allegations" are not required, id. at 678

(quoting Twombly, 550 U.S. at 555), but a claim must be "nudged . . . across the line from

conceivable to plausible," id. at 680 (quoting Twombly, 550 U.S. at 570).  "The plausibility

standard is not akin to a 'probability requirement,'" but there must be "more than a sheer

possibility that a defendant has acted unlawfully."  Id. at 678 (quoting Twombly, 550 U.S. at

556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of "entitlement to relief."'"  Id.

(quoting Twombly, 550 U.S. at 557).

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.      Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 257 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "Inferences should be drawn in the light most

favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

## IV.   ANALYSIS

### A.   Failure to State a Claim- Count One

Defendants assert that the constitutional claims in count one against Defendants Semenza and Hannevig should be dismissed for failure to state a claim because Plaintiff does not allege any facts that these Defendants were personally involved in a violation of his constitutional rights. Defs.' Mot. Summ. J. 10. Defendants contend that Plaintiff's "belief"[3] that they were involved is insufficient to state a claim or to open the doors to discovery. Defs.' Mot. 11 (citing Iqbal, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")).

Plaintiff suggests, however, that his mere allegations that these Defendants were present and involved in the violation of his constitutional rights are sufficient to state a claim. Pl.'s Resp. Defs.' Mot. Summ. J. 12. Additionally, Plaintiff submits that Defendants' varying recollections as to whether Defendant Hannevig lied to Plaintiff to get him to open the door requires further discovery. Id. Alternatively, Plaintiff seeks leave to file an amended complaint to cure any deficiencies. Id.

### 1.   *Personal Involvement- Plaintiff's Belief*

"A defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor,

---

[3] Plaintiff alleges that Defendants Semenza and Hannevig "were involved in the planning, preparation, and are believed to have been involved in the forceful entry to Plaintiff's residence, and the arrest and wrongful detention of Plaintiff." Compl. ¶ 22.

451 U.S. 527, 537 n.3 (1981).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  Rode, 845 F.2d at 1207-08; Positano v. Wetzel, 529 Fed. Appx. 116, 120 (3d Cir. 2013) (same).

Plaintiff alleges merely that Defendants Semenza and Hannevig "are believed to have been involved in the forceful entry to Plaintiff's residence, and the arrest and wrongful detention of Plaintiff," and that they "were involved in the planning, preparation [of the events]."  Compl. ¶ 22.  These allegations are insufficient to establish the personal involvement of either Defendant.  See Walker v. Campbell, No. 09-282, 2010 U.S. Dist. LEXIS 72618, at *25 (W.D. Pa. May 4, 2010) (concluding that the "Plaintiff's unsupported assertions that upon information and belief [the defendants decisions were] made in furtherance of the conspiracy to retaliate for Plaintiff's protected speech and expressive conduct" is insufficient to establish the personal involvement of the defendants); Banda v. Corzine, No. 07-4508, 2007 U.S. Dist. LEXIS 80932, at *23 (D.N.J. Nov. 1, 2007) (dismissing the defendants with prejudice because the plaintiffs' allegations were based solely on the plaintiffs' belief and "fail to indicate that these Defendants had any form of affirmative personal involvement in the matter").

2. *Conspiracy Claim*

"To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'"  Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).  A "plaintiff must assert facts from which a conspiratorial agreement can be inferred" and "[u]nlike factual assertions, mere conclusions are not entitled to the presumption of truth."  Mitchell v. Beard, 492 Fed. Appx. 230, 235 (3d Cir.

10

2012) (citing <u>Great Western Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 178 (3d Cir. 2010)).  "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." <u>Goodson v. Maggi</u>, 797 F. Supp. 2d 624, 638 (W.D. Pa. 2011) (recognizing that a heightened pleading standard does not apply).  "Further, in light of <u>Twombly</u> and its progeny, there must be 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" <u>Id.</u> (quoting <u>Great Western Mining & Mineral Co.</u>, 615 F.3d at 178).

Plaintiff's allegations that Defendants Semenza and Hannevig "were involved in the planning, preparation [of the events]," Compl. ¶ 22, without more, is insufficient to state a conspiracy claim under section 1983.  <u>See</u> <u>Araromi v. Middle Twp. Police Dep't</u>, No. 10-1048, 2014 U.S. Dist. LEXIS 42887, at *34 (D.N.J. Mar. 31, 2014) (finding "no evidence in the record of any combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right and granting the defendants summary judgment); <u>Goodson</u>, 797 F. Supp. 2d at 638 (dismissing the section 1983 conspiracy claim because the plaintiff "failed to allege any facts that plausibly suggest a meeting of the minds between [the defendants]" and finding that the plaintiff's "bald allegations" that "Defendants, at some unidentified point, held meetings without Plaintiff's defense counsel present, conspired to make false statements, and that during a conference call, he overheard some Defendants making racially disparaging remarks" were insufficient to state a claim upon which relief can be granted); <u>Walker</u>, 2010 U.S. Dist. LEXIS 72618 at *25.  Moreover, Plaintiff's allegation that "[t]here was no intent to arrest

Plaintiff or search his residence" when Defendants arrived tends to negate any inference of a conspiracy.  See Second Am. Compl. ¶ 12.

The motion to dismiss Defendants Semenza and Hannevig is granted.  However, Plaintiff's request for leave to file an amended complaint in this regard will be granted.[4]

B.    **Qualified Immunity- Count One**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The Supreme Court has "recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be held personally liable."  Anderson v. Creighton, 483 U.S. 635, 641 (1987).  "A court required to rule upon the qualified immunity issue must consider: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

---

[4] The Court notes that it is troubled that there have already been three counseled complaints, and that this action was initiated approximately two years ago regarding events that occurred almost three years ago.  Nevertheless, the original Complaint, which did not identify any individual officers, was amended following a motion to dismiss the Commonwealth of Pennsylvania and the Pennsylvania State Police as parties.  See ECF Nos. 1, 4.  Thereafter, the Motion to Dismiss the First Amended Complaint was filed on behalf of Defendant Noonan only.  See ECF Nos. 5, 7.  Accordingly, this is the first time Plaintiff has sought leave to amend allegations against Defendants Hannevig and Semenza and the Court cannot conclude that an amendment would be futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding that leave to amend should be granted "unless amendment would be inequitable or futile").  Plaintiff is cautioned, however, that any future requests for leave to amend will likely be denied for undue delay.  See Harden v. Knight, 374 F. App'x 236, 237 (3d Cir. 2010) (holding that the district court did not abuse its discretion by denying leave to amend an already amended complaint because "the proposed amendment was based on information [the plaintiff] knew about before he filed his case but that he submitted after considerable delay").

violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the plaintiff can

show a violation of a constitutional right, the "next, sequential step is to ask whether the right

was clearly established."  Id.  "The relevant, dispositive inquiry in determining whether a right is

clearly established is whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted."  Id.

As will be discussed in greater detail below, Plaintiff suggests that there are genuine

issues of material fact and that he has not had an opportunity to conduct meaningful and

pertinent discovery, making Defendants' summary judgment motion on the issue of qualified

immunity premature.  Significantly, "qualified immunity is not a mere defense from liability[,

but] 'an entitlement not to stand trial or face the other burdens of litigation.'"  Curley v. Klem,

298 F.3d 271, 277 (3d Cir. 2002) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

"[T]he Supreme Court has repeatedly stressed the importance of resolving immunity questions at

the earliest possible stages of litigation."  Curley, 298 F.3d at 277.  Nevertheless, "a decision on

qualified immunity will be premature when there are unresolved disputes of historical fact

relevant to the immunity analysis."  Id. at 278.  See Newland v. Reehorst, 328 Fed. Appx. 788,

791 n.3 (3d Cir. 2009) (holding that "it is generally unwise to venture into a qualified immunity

analysis at the pleading stage as it is necessary to develop the factual record in the vast majority

of cases").

Additionally, Plaintiff argues that Defendants Volpe and Watkins "irrefutably were state

actors acting on behalf of state entities and in furtherance of local authorities," preventing

qualified immunity.  See Pl.'s Resp. Defs.' Mot. Summ. J. 6-7.  However, the Second Amended

Complaint states that Defendant Watkins "was on assignment as of January 9, 2013, to the

United States Marshall's [sic] Task Force," Second Am. Compl. ¶ 2, and Defendant Watkins

testified to the same, Watkins Dep. 12:13-20.  Defendants have also provided an affidavit from United States Attorney for the Eastern District of Pennsylvania Zane David Memeger attesting that both Defendants were acting as specifically deputized Deputy United States Marshals at the time of the events in this matter.  Memeger Aff., Ex. 1, ECF No. 52.

Despite this evidence, Plaintiff has not offered any factual allegations or cited any legal authority to support his broad conclusory claim that these Defendants were not acting as federal agents or were acting beyond the scope of their authority.  See Garland v. US Airways, Inc., No. 05-140, 2006 U.S. Dist. LEXIS 60000, at *5-6 (W.D. Pa. Aug. 24, 2006) (finding that the plaintiff had not set forth any facts in the complaint that would support a finding that the defendants acted outside the scope of their federal employment and refusing to allow limited discovery on scope of employment).  Rather, Plaintiff's arguments are based on his mistaken belief that because these Defendants were state or local employees that they could not have been acting as federal agents.  This position is incorrect.  See Adams v. Springmeyer, 17 F. Supp. 3d 478, 506 (W.D. Pa. 2014) ("Local law enforcement officials working as [federally deputized Task Force Officers] are generally regarded as federal agents."); Cook v. Drew, No. 06-38, 2007 U.S. Dist. LEXIS 77769, at *18-19 n.3 (W.D. Pa. Oct. 19, 2007) (holding that state law enforcement officers deputized as federal agents constitute federal agents acting under federal law that may be shielded by qualified immunity).  Accordingly, the Court finds that Defendant Watkins and Defendant Volpe were acting as federal agents at the time of this incident and are afforded the same immunity defenses available to the other federal Defendants.

1.    *Unlawful Entry*

"[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when

there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980).

"To determine whether the police had probable cause to believe a suspect was residing and present in a home, [the courts] apply a common sense approach and consider the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality." United States v. Veal, 453 F.3d 164, 167-68 (3d Cir. 2006) (internal quotations omitted). Further, if an officer reasonably believed that the individual named in a valid arrest warrant "was a co-resident in the plaintiff's home, then the Fourth Amendment rights of the plaintiff would not have been violated by the warrantless search, even if [the individual named in the arrest warrant] was not, in fact, a resident." Ulitchney v. Ruzicki, No. 3:07-2189, 2009 U.S. Dist. LEXIS 121296, at *16-17 (M.D. Pa. Dec. 30, 2009) (finding that there was probable cause for the officer to believe that the subject of the warrant was residing at the plaintiff's residence and was inside the residence at the time of the entry).

Defendants argue that they are entitled to qualified immunity because they had a valid arrest warrant for Plaintiff's brother, reasonably believed he was residing at Plaintiff's residence, and when Plaintiff opened the door, reasonably believed, in light of their physical similarities, that he was the person named in the arrest warrant.  Plaintiff responds that Defendants arrested him "knowing that Plaintiff was not Rogel Suero."  Second Am. Compl. ¶ 21.

The evidence of record at this time shows that Plaintiff and his brother had similar heights, weights, builds, eye color, and hair color.  The Task Force, which had photographs of both Plaintiff and Rogel that were approximately three to four years old, also knew they were

both black-Hispanic males approximately thirty years of age.  This evidence supports[5]

Defendants' claim that they reasonably believed Plaintiff was the subject of the arrest warrant.

However, Plaintiff has alleged that Defendants knowingly arrested the wrong person.  Cf.

Garcia v. County of Bucks, 155 F. Supp. 2d 259, 266 (E.D. Pa. 2001) (dismissing the false arrest

claim and finding probable cause to arrest the plaintiff, even though it was eventually determined

that he was not the subject of the arrest warrant, because there was no allegation that the officers

knew they were arresting the wrong person).  Plaintiff asserts that Defendants knew it was his

residence, knew that he was out of work with a knee injury, observed his vehicle parked outside,

and had photographs of both he and his brother.  Further, Defendant Watkins testified that when

Plaintiff opened the door, they "were uncertain[6] if it was his brother, if it was Rogel."  Watkins

Dep. 33:9-19.  Drawing all inferences in the light most favorable to Plaintiff, the Court finds

---

[5] In El Bey, the Sixth Circuit Court of Appeals faced a similar situation.  The court explained, "[t]he key fact in this case . . . is that when the officers knocked on the door to 1580 Greenlake Drive, they saw someone whose appearance generally matched the physical description of the suspect for whom they were looking. Thus, the question of whether the officers had a reasonable belief that [the fugitive] was present at the residence is intertwined with the question of whether it was reasonable for the officers to mistake [the plaintiff] for [the fugitive]."  El Bey v. Roop, 530 F.3d 407, 417-18 (6th Cir. 2008).  Despite the plaintiff's claim that there were "clear physical differences," the court determined that "the record makes clear that there were substantial similarities in the two mens' appearances."  El Bey, 530 F.3d at 418 (noting that both "men were of the same race (African American) and similar height (5 feet 10.5 inches versus 5 feet 9 inches) and weight (160 pounds versus 176 pounds)").  The court held that "[t]hese similarities support the conclusion that the officers reasonably believed that [the plaintiff] was the subject of the arrest warrant" and granted qualified immunity on the unlawful entry claim. Id. at 419.  However, the officers in El Bey were not aware that another male was living at the address where they went to serve the arrest warrant, nor did they have photographs of both the individual named in the arrest warrant and the individual they arrested.

[6] This testimony, in itself, is not a basis to deny qualified immunity, see Cincerella v. Egg Harbor Twp. Police Dep't, No. 06-1183, 2009 U.S. Dist. LEXIS 22950, at *22-23 (D.N.J. Mar. 23, 2009) (holding that law enforcement officers need not be "certain" that the subject of an arrest warrant is inside the home at the time they enter because they need only have a "reasonable belief"), but coupled with Plaintiff's factual allegations, it supports Plaintiff's argument that summary judgment is premature at this time.

there are genuine issues of material fact as to whether Defendants reasonably believed Rogel was home when they entered the apartment and cannot grant summary judgment.  Qualified immunity on this claim is therefore denied without prejudice.

      2.     *False Arrest and False Imprisonment*

"[T]he Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause."  <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482 (3d Cir. 1995).  "False arrest and false imprisonment are [] nearly identical claims, and are generally analyzed together."  <u>Maiale v. Youse</u>, No. 03-5450, 2004 U.S. Dist. LEXIS 17442, at *39 (E.D. Pa. Aug. 26, 2004).  "Specifically, false arrest is one made without probable cause."  <u>Karkut</u>, 453 F. Supp. 2d at 879.  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  <u>Orsatti</u>, 71 F.3d at 482.  "Police officers acting pursuant to a facially valid warrant generally are deemed to have probable cause to arrest."  <u>Garcia v. Cty. of Bucks</u>, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001).  While an officer "making an arrest pursuant to such a warrant generally is not required to investigate the arrestee's claim of innocence or mistaken identity," . . ."[t]his does not mean, of course, that an officer may arrest an individual whom he knows it not the subject of the warrant."  <u>Id.</u> at 265-66.  <u>See also</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) ("The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested.").  "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."  <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995).

Defendants argue that Defendant Watkins is entitled to qualified immunity on Plaintiff's claims of false arrest and false imprisonment because he acted pursuant to a valid arrest warrant and reasonably believed that he arrested the person named in the warrant.  Additionally, Defendants contend that Defendant Watkins detained Plaintiff only as long as was necessary to confirm his identity.  Plaintiff opposes, asserting that Defendants knowingly arrested the wrong person, and that his four-hour detention was excessive.

Considering Plaintiff's allegation that Defendants knew he was not Rogel at the time of the arrest, and for the reasons stated above regarding the unlawful entry claim, the Court finds that there are genuine issues of material fact which preclude an award of summary judgment at this time.

   3.   *Excessive Force*

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).  "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 397.  "Because 'police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation,' the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective," and the Supreme Court has "cautioned against the '20/20 vision of hindsight' in favor of deference to the judgment of reasonable officers on the scene.  Saucier v. Katz, 533 U.S. 194, 205 (2001) (quoting Graham, 490 U.S. at 393, 396-97); Phong Duong v. Telford Borough, 186 F. App'x

214, 216 (3d Cir. 2006) (concluding that the proper test for evaluating an excessive force claim is one of objective reasonableness under the totality of the circumstances).

Defendants assert that Defendant Volpe is entitled to qualified immunity for his use of force because it was objectively reasonable to mistake Plaintiff for his fugitive brother, and that Defendant Volpe used the minimal amount of force necessary to effectuate an arrest. Defendant Watkins testified that when Plaintiff opened the door, he was ordered to get on the ground, but that he backed away and "took a fighting stance, meaning that he raised his arms up and positioned his legs squared upon us, and that's when the person with the shield moved forward." Watkins Dep. 33:16-34:3. Plaintiff alleges, however, that when he opened the door, Defendants "rushed into [his] apartment" and that Defendant Volpe "intentionally and deliberately charged [him], and struck him in the face with a ballistics shield, before tackling and wrestling [him] to the ground." Second Am. Compl. ¶¶ 19-20. Plaintiff contends, in his opposition brief, that he did nothing to provoke being attacked.

As previously discussed, a finding that it was objectively reasonable to mistake Plaintiff for his brother would be premature at this time. There are also genuine issues of material fact as to what happened when Plaintiff opened the door, and a determination as to whether Defendants' use of force was objectively reasonable cannot be made until after some discovery. See Kelly v. Blake, No. 93-CV-0365, 1993 U.S. Dist. LEXIS 5479, at *13-14 (E.D. Pa. Apr. 26, 1993) (concluding that "whether the Defendants violated plaintiff's constitutional rights [against the excessive use of force] of which a reasonable person would have known is a matter that is properly left for inquiry after discovery"). The motion for summary judgment on this claim is therefore denied without prejudice.

### C.      Absolute Immunity- Count Two

Defendants contend that the individual Defendants are absolutely immune to common law torts, that Plaintiff's claims are controlled by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1) and 2671, and that the United States must be substituted as the sole defendant.  Defs.' Mot. Summ. J. 25-31.  Defendants assert that Plaintiff previously agreed to substitute the United States as defendant for Defendants Semenza and Hannevig in count two, but would not agree to the substitution for Defendants Volpe and Watkins because they are members of state and local law enforcement.  Defendants have submitted an affidavit stating that Defendants Volpe and Watkins were acting as specifically deputized Deputy United States Marshals at the time of the events in this matter, see Memeger Aff., and argue that they are therefore entitled to absolute immunity.  Defs.' Mot. Summ. J. 27 (citing 28 U.S.C. § 2671 (defining an "[e]mployee of the government" to include "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation")).  Specifically, United States Attorney Zane David Memeger signed a Certification of Scope of Employment "by virtue of the authority vested in [him] by 28 C.F.R. § 15.4(a)" attesting that Defendants Volpe and Watkins, as well as Defendants Eck, Semenza, and Hannevig, "were acting within the scope if their federal duties as employees of the United States, during the relevant time period. . . ."  Memeger Aff.

In response to Defendants' motion for summary judgment on the tort claims in count two, Plaintiff responds merely that there are genuine issues of material fact.  Pl.'s Resp. Defs.' Mot. Summ. J. 10-11.  Plaintiff suggests that if the Court finds genuine issues of material fact over the qualified immunity defenses, it must also find genuine issues of material fact over the tort claims.

As previously determined, Defendants Watkins and Volpe were acting as federal agents on January 9, 2013, and are afforded the same immunity defenses available to the other federal Defendants.  Further, pursuant to 28 U.S.C. § 2679(d)(1):

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1) (emphasis added).  The Court finds no genuine issues of material fact in this regard.  See Brown v. Camden County Counsel, No. 06-6095, 2008 U.S. Dist. LEXIS 60716, at*18-19 (D.N.J. Aug. 6, 2008) (determining that "[b]ecause no specific facts are alleged as to the moving defendants in general or in particular that rebut the Attorney General's certification, the moving defendants are immune from this suit" and substituting the United States as the sole defendant).  Accordingly, Defendants' Motion is granted and count two is dismissed with prejudice against Defendants Watkins and Volpe.  The United States is substituted as Defendant in their stead.

### D.      Count Two- Failure to State a Claim

#### 1.      *Assault and Battery, False Arrest, and False Imprisonment*

Defendants argue that summary judgment should be granted in favor of the United States on Plaintiff's tort claims for assault and battery, false arrest, and false imprisonment.  However, for the reasons set forth herein in addressing Plaintiff's constitutional claims for unlawful entry, for false arrest and false imprisonment, and for the excessive use of force, summary judgment is premature at this time.  See Giordano v. Murano-Nix, No. 12-7034, 2014 U.S. Dist. LEXIS 1861, at *36 (E.D. Pa. Jan. 7, 2014) (In considering the state law claims of false arrest and false imprisonment, the court stated that because the "tests for determining probable cause are

essentially the same under the federal and Pennsylvania constitutions," its conclusion "under the Fourth Amendment . . . also holds under Pennsylvania state law"); Garey v. Borough of Quakertown, No. 12-0799, 2013 U.S. Dist. LEXIS 91798, at *23 (E.D. Pa. July 1, 2013) ("The question of whether an officer is liable for assault and battery under Pennsylvania law turns on whether he or she has used an excessive degree of force, as a matter of Fourth Amendment law, in dealing with an arrestee."). The request for summary judgment on these claims is denied without prejudice.

2. *Intentional Infliction of Emotional Distress*

Defendants assert that Plaintiff's claim for IIED under count two should be dismissed against the United States for failure to state a claim because Defendants' alleged conduct does not rise to the level of outrageousness. Plaintiff fails to respond to Defendants' Motion to Dismiss this claim.[7]

"The Pennsylvania Supreme Court has not explicitly recognized the tort of intentional infliction of emotional distress, but the Third Circuit has 'consistently predicted . . . that the Pennsylvania Supreme Court will ultimately recognize this tort.'" Kreider v. Breault, No. 10-3205, 2012 U.S. Dist. LEXIS 4268, at *23 (E.D. Pa. Jan. 12, 2012) (quoting Pavlik v. Lane Ltd./Tobacco Exps Int'l, 135 F.3d 876, 890 (3d Cir. 1998)). See also Rinehimer v. Luzerne County Community College, 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988) (stating that some "Pennsylvania courts have found a cause of action for intentional infliction of emotional distress to exist only in limited circumstances, where the conduct has been clearly outrageous").

---

[7] As mentioned previously, Plaintiff argues merely that there are genuine issues of material fact over the tort claims. However, Defendants have not sought summary judgment on the IIED claim; rather, they have filed a motion to dismiss.

There are four elements to an IIED claim: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1274 (3d Cir. 1979). "Liability on an intentional infliction of emotional distress claim 'has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Reedy v. Evanson, 615 F.3d 197, 231-32 (3d Cir. 2010) (quoting Field v. Philadelphia Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)). "In Pennsylvania, this action has been found to lie in only a limited number of cases." Arnold v. City of Phila., No. 14-2598, 2015 U.S. Dist. LEXIS 169928 at *20 (E.D. Pa. Dec. 21, 2015).

Plaintiff has not alleged any facts to suggest that Defendants' actions were extreme, outrageous, atrocious, or utterly intolerable. Accordingly, this claim will be dismissed with prejudice and any amendment in this regard would be futile. See Grayson, 293 F.3d at 108 (allowing a court to deny leave to amend[8] is an "amendment would be inequitable or futile").

### E. Motion to Stay Discovery

Defendants contend that discovery should be stayed pending resolution of the qualified immunity issue because qualified immunity is not merely a defense at trial, but is an entitlement not to face the burdens of litigation. Plaintiff responds that the Motion should be denied because discovery is necessary for the Court to rule on the qualified immunity issue.

As discussed herein, the Court finds that discovery is necessary before making a decision on qualified immunity. However, because the "entitlement is an *immunity from suit* rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (U.S. 1985), discovery will be

---

[8] Plaintiff has neither requested leave to amend, nor given any indication of what additional facts could be alleged to state a cause of action for IIED.

limited to this issue. See Anderson, 483 U.S. at 646 (providing that when discovery is necessary before a motion for summary judgment on qualified immunity grounds can be resolved, "any such discovery should be tailored specifically to the question of [the defendant's] qualified immunity"). The two individual Defendants that have sought qualified immunity are Defendants Watkins and Volpe. As the issue of qualified immunity involves the reasonableness of their actions, discovery will be restricted to their depositions[9] and to any written discovery on this limited issue. The deposition of Plaintiff will also be necessary to resolving any renewed summary judgment motion for qualified immunity and he shall be deposed.[10]

## V.    CONCLUSION

For the reasons set forth in this Memorandum, the Motion of the Federal Defendants to Dismiss and/or for Summary Judgment is granted in part. Defendants Hannevig and Semenza are dismissed for their lack of personal involvement. However, Plaintiff will be allowed to file an amended complaint in this regard. The motion for summary judgment on the basis of qualified immunity is denied without prejudice. Plaintiff's state law tort claims are dismissed as to Defendants Watkins and Volpe and the United States is substituted as Defendant in their places. The motion for summary judgment as to Plaintiff's tort claims for assault and battery, false arrest, and false imprisonment is denied without prejudice. Plaintiff fails to state a cause of action for IIED and this claim is dismissed from count two with prejudice.

---

[9] Because Defendant Watkins' deposition has already been taken, the Court will require that Defendant Volpe submit to a deposition.

[10] The parties may agree to conduct additional discovery, but unless it is shown that the requested discovery is necessary to resolving the qualified immunity issue, the Court will not require the parties to engage in additional discovery at this time.

Defendants' Motion to Stay Discovery is granted in part.  The Court will allow limited discovery on the qualified immunity defense, restricted to written discovery requests on this issue and to the depositions of Plaintiff and of Defendant Volpe.

A separate order will be issued.


BY THE COURT:


/s/ Joseph F. Leeson, Jr._____
JOSEPH F. LEESON, JR.
United States District Judge